**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RACHEL DROZD,** | : | **Civil No.  1:21-CV-2063** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **KILOLO KIZAKAJI,** | : | |
| **Acting Commissioner of Social Security,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.    Introduction

As plaintiff's counsel has aptly noted: "This is an unusual case." (Doc. 16 at 1).

The plaintiff, Rachel Drozd, is a disability claimant who was a younger worker in her early 40s at the time of the alleged onset of her disability. Drozd claimed to be disabled due to lumbar spondylosis, degenerative disc disease, radiculopathy, a sprain of the lumbosacral joint ligament, myofascial pain syndrome/chronic pain syndrome, fibromyalgia, adjustment disorder, major depressive disorder, panic disorder, and generalized anxiety disorder. (Tr. 19). Notwithstanding these impairments, the Administrative Law Judge (ALJ) who heard this case concluded that Drozd possessed the residual functional capacity (RFC) to

perform a range of light work subject to a series of carefully crafted mental workplace limitations, stating that Drozd " is limited to work involving only simple, routine tasks, but not at a production rate pace; is limited to no more than simple work-related decisions; could tolerate no more than occasional changes in the work setting; and is limited to occasional interaction with supervisors, co-workers, and the public." (Tr. 23). In reaching this result, the ALJ relied upon the testimony of a vocational expert who stated that "given all of [Drozd's impairments she] would be able to perform the requirements of representative occupations such as a garment folder (DOT# 789.687-066), with approximately 87,602 positions available in the national job market; as a marker (DOT# 209.587-034), with approximately 62,381 positions available in the national job market; and as a routing clerk (DOT# 222.587-038), with approximately 67,479 positions available in the national job market." (Tr. 30, 71).

With respect to the intellectual requirements of these jobs, all three jobs identified by the vocational expert had a specific vocational preparation (SVP) level of 2. (Id.) Further, the training requirements for these SVP 2 positions are modest and consist of "[a]nything beyond short demonstration up to and including 1 month." APPENDIX C - COMPONENTS OF THE DEFINITION TRAILER, 1991 WL 688702. The vocational expert further testified that her opinion that Drozd could

perform these tasks was consistent with the guideposts established by the Dictionary of Occupational Titles. (Tr. 71-72). However, at the close of her testimony the vocational expert also stated as follows in response to counsel's questioning:

> Atty: The jobs that you cited in response to the Judge's hypotheticals, at least during the training period, would the interaction with coworkers and supervisors amount to more than occasional, at least during the training period, for the jobs that you cited?
>
> VE: Yes, they would.
>
> (Tr. 74).

Citing this exchange, Drozd now challenges the ALJ's residual functional capacity assessment based upon a specific and narrowly focused argument. According to Drozd, this RFC assessment fails as a matter of law because there was a latent shortcoming in this evaluation: the alleged failure of the vocational expert and ALJ to fully account for the amount of time that Drozd might initially need to spend with supervisors being trained for these simple tasks. Drawing upon this remark by the vocational expert which acknowledged that Drozd's initial training would involve more than occasional contact with a supervisor, the plaintiff argues that the failure to take this training period into account completely undermined the ALJ's entire decisional rationale.

In considering this claim, we are mindful of two guiding legal tenets. First, as the Supreme Court has underscored for us, we employ a limited scope of review

when considering Social Security appeals. Our task is simply to determine whether

substantial evidence supports the ALJ's decision. On this score:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

Second, consistent with this deferential standard of review, when we are

called upon to assess whether an ALJ has sufficiently articulated a rationale for the

mental and emotional components of an RFC, we have been instructed that this

aspect of an RFC is sufficient "as long as the ALJ offers a 'valid explanation' " for

the mental and emotional limitations imposed upon a worker. Hess v. Comm'r Soc.

Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, it has been held that an ALJ

offers a valid explanation for a mental RFC when the ALJ highlights factors such as

4

"mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

Thus, Hess tells us that the legal sufficiency of an ALJ's mental RFC assessment should not be addressed in the abstract, through a mechanical process which requires adherence to certain terms of art. Instead, this analysis should be a pragmatic consideration grounded in the evidence presented at the disability hearing. Mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' " Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019), and recognizing that a mental RFC is sufficient "as long as the ALJ offers a 'valid explanation,' " for the mental and emotional limitations imposed upon a worker, Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019), we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.   **Statement of Facts and of the Case**

On July 16, 2019, Rachel Drozd applied for disability benefits pursuant to Title II of the Social Security Act, alleging that she had become totally disabled in

5

November of 2017 due to lumbar spondylosis, degenerative disc disease, radiculopathy, a sprain of the lumbosacral joint ligament, myofascial pain syndrome/chronic pain syndrome, fibromyalgia, adjustment disorder, major depressive disorder, panic disorder, and generalized anxiety disorder. (Tr. 16, 19). Drozd was born in September of 1974 and was 43 years old at the time of the alleged onset of her disability, making her a younger worker under the Commissioner's regulations. She had a high school education and had prior employment as a billing clerk, shipping and receiving clerk, and in the customer service field. (Tr. 29).

This appeal challenges the sufficiency of the ALJ's analysis of Drozd's emotional impairments and specifically argues that this analysis was deficient and infirm because the ALJ did not sufficiently reconcile the RFC, which confined Drozd to light work and found that she "is limited to work involving only simple, routine tasks, but not at a production rate pace; is limited to no more than simple work-related decisions; could tolerate no more than occasional changes in the work setting; and is limited to occasional interaction with supervisors, co-workers, and the public," (Tr. 23),  with the training requirements for the jobs identified by the vocational expert.

As we have noted, this issue cannot be addressed in the abstract, but should be evaluated in the context of the ALJ's articulated factual findings concerning

6

Drozd's mental capabilities none of which have been directly challenged in this appeal. In this regard, the ALJ's factual findings underscored that Drozd retained the ability to meet the mental demands of the workplace, notwithstanding her emotional impairments.

In this case, the ALJ found at Step 2 of the sequential analysis which applies to Social Security appeals that Drozd's severe impairments included adjustment disorder, major depressive disorder, panic disorder, and generalized anxiety disorder. (Tr. 19). While the ALJ concluded that these emotional impairments were severe at Step 2, the ALJ also found that these impairments, singly and combined, did not meet any Social Security listing requirements. (Tr. 19-22).

On this score, the ALJ found that:

Mentally, the claimant underwent an initial mental status examination of the claimant on May 25, 2018. Therein, the claimant demonstrated that she experienced a depressed and anxious mood with a congruent, tearful, and flat affect. However, her thought process remained logical and coherent, her concentration was fair, and she remained well oriented. The claimant's insight and judgment were both fair (Exhibit 5F, pages 40 and 41). Throughout 2018, the claimant participated in periodic therapy with Tiffany Griffiths, Psy.D., on a monthly basis. During this course of care, the claimant experienced ongoing symptoms of depression and anxiety. However, the record is devoid of evidence to show that the claimant experienced symptomatology that necessitated more invasive modalities of treatment such as inpatient psychiatric hospitalization and/or partial program care (Exhibit 5F). In June of 2019, the claimant remained well oriented (Exhibit 8F, page 10). At a September 2019 consultative examination, mental status examination findings showed that the claimant's thought process was

coherent and goal directed with no evidence of hallucinations, delusions, or paranoia in the evaluation setting. Her affect was depressed and her mood was dysthymic. Nevertheless, she remained well oriented and her concentration and attention were intact. Although the claimant's recent and remote memory were mildly impaired, the claimant's cognitive functioning appeared to be average while her insight/judgment was good (Exhibit 9F). The claimant remained well oriented in January of 2020 (Exhibit 10F, page 8). Mental status examination findings in February of 2020 showed that the claimant was well oriented despite an anxious mood. Her affect was of full range and her thought process and content were rational.

(Tr. 25-26).

The ALJ also observed that Drozd had only mild limitations in understanding, remembering, or applying information. (Tr. 21). As for Drozd's ability to interact with others, the ALJ determined that she experienced only moderate limitations, and specifically found that "[s]he has never been fired due to interpersonal issues and she reports no limitation when interacting with authority figures." (Tr. 22). The ALJ further found that Drozd had only mild limitations in concentration, persistence and pace, but encountered moderate limitations in adapting to new situations. (Id.).

The ALJ also concluded that the greater weight of persuasive medical expert opinion supported the proposition that Drozd could meet the mental and emotional demands of the workplace with some accommodations. For example, the ALJ stated that:

Krista Coons, Psy.D. completed a consultative examination of the claimant on September 19, 2019. Therein, she indicated that the

8

claimant's depression, anxiety, and panic disorder caused the claimant limitation in her ability to work. In her residual functional capacity assessment, the claimant had moderate limitation in her ability to interact with others and moderate limitation in her ability to respond to pressures and changes in the work setting. All other limitation was seen as mild (Exhibit 9F). The undersigned finds this opinion significantly persuasive . . . .

(Tr. 26).

Likewise the ALJ observed that:

Karen Plowman, Psy.D. completed the state agency initial mental assessment on September 27, 2019. Therein, she indicated that the claimant's depression and anxiety caused the claimant mild limitation in her ability to understand, remember, and apply information, moderate limitation in her ability to interact with others, mild limitation in her ability to concentrate, persist, and maintain pace, and moderate limitation in her ability to adapt or to manage herself. In her residual functional capacity assessment, the claimant had: moderate limitation in her ability to interact with others; moderate limitation in her ability to respond appropriately to changes in the work setting; and moderate limitation in her ability to travel to unfamiliar places or to use public transportation (Exhibit 1A). Soraya Amanullah, Ph.D. completed the state agency mental reassessment on March 10, 2020. Therein, she found that the claimant had the same impairments and the same degree of limitation as those identified by Dr. Plowman (Exhibit 3A). The undersigned finds these opinions persuasive, as the psychological evidence of record, inclusive of the mental status examination findings, supports a finding that the claimant is able to complete the range of simple work suggested by Drs. Plowman and Amanullah.

(Tr. 27).

The ALJ then formulated an RFC for Drozd that limited her to light work with the following additional restrictions to account for her emotional impairments.

9

Drozd was "limited to work involving only simple, routine tasks, but not at a production rate pace; [was] limited to no more than simple work-related decisions; could tolerate no more than occasional changes in the work setting; and [was] limited to occasional interaction with supervisors, co-workers, and the public." (Tr. 23).

Based upon this RFC determination, the ALJ concluded that Drozd could not return to her past work but could perform the duties of a garment folder, a marker and a routing clerk. (Tr. 30)  Based upon these findings, the ALJ held that Drozd did not meet the stringent standard for disability prescribed by the Act and denied her claim. (Id.)

These findings were based, in part, upon the testimony of a vocational expert at a hearing held for this disability application on December 9, 2020. (Tr. 35-75). The testimony of this vocational expert is pivotal to the resolution of this appeal, since Drozd argues on appeal that the ALJ's decision was flawed because it did not adequately address an internal inconsistency in the vocational expert's testimony regarding her ability to meet the mental demands of the workplace. At this hearing, in response to questions by the ALJ, the vocational expert testified that a person with the plaintiff's impairments who was limited to light work that entailed only occasional contact with supervisors, coworkers, and the public could perform three jobs in the national economy—garment folder, marker and routing clerk. (Tr. 70).

In reaching this conclusion, the vocational expert identified three jobs that had a specific vocational preparation (SVP) level of 2.[1] In terms of its intellectual requirements, this is a forgiving standard for work. The training requirements for SVP 2 positions are modest and consist of "[a]nything beyond short demonstration up to and including 1 month." APPENDIX C - COMPONENTS OF THE DEFINITION TRAILER, 1991 WL 688702. Further, these positions entailed Level 1 or Level 2 reasoning skills, which simply required the worker to "[a]pply commonsense understanding to carry out simple one or two step instructions." (Tr. 76), or  [a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." (Tr. 126, 184). Thus, the intellectual demands of the representative jobs were modest, and the training requirements were minimal.

While the vocational expert testified that all of these factors suggested that these jobs could be performed by Drozd with only occasional contact with others, at the close of cross examination the following brief exchange took place between counsel and the vocational expert:

> Atty: The jobs that you cited in response to the Judge's hypotheticals, at least during the training period, would the interaction with coworkers and supervisors amount to more than occasional, at least during the training period, for the jobs that you cited?

---

[1] The Dictionary of Occupational Titles descriptions of these positions are set forth at Tr. 76-190.

VE: Yes, they would.

(Tr. 74).

Drozd's appeal rests upon this single question and answer. Focusing upon this exchange, Drozd argues that the possibility that initial brief training for these intellectually undemanding jobs might involve more than occasional contact in the first weeks on the job. Drozd then posits that the failure to speak to this possibility completely undermines the ALJ's decision in this case in a way which compels a remand. This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, under the deferential standard of review that applies here, we will affirm the decision of the Commissioner.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

12

support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." <u>Leslie v. Barnhart</u>, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. <u>T-Mobile South, LLC v. Roswell</u>, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial

13

evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D.Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review, "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d

14

607, 611 (3d Cir. 2014) (citing <u>Rutherford</u>, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather, our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." <u>Burnett v. Comm'r of Soc.</u> <u>Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. <u>Id.</u> at 120; <u>see</u> <u>Jones v. Barnhart</u>, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice, ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim made here, based upon alleged inadequacies in the articulation of a claimant's mental RFC. In <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 212 (3d Cir. 2019), the United States Court of Appeals recently addressed the standards of articulation that apply in this setting. In <u>Hess</u> the court of appeals considered the question of whether an RFC which limited a claimant to simple tasks adequately addressed moderate limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that: "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.' " <u>Hess</u>, 931 F.3d at 211. On this score, the appellate court indicated that an ALJ offers a valid explanation on a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " <u>Id.</u> at 214.

In our view, the teachings of the <u>Hess</u> decision are straightforward. In formulating a mental RFC the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

**B.**   **Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed

to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.  42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e),  404.1545(a)(1),  416.920(e),  416.945(a)(1).  In  making  this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. <u>Mason</u>, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with the claimant's age, education, work, experience, and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id.</u> at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F. 3d 429, 433 (3d Cir. 1999).

C.   **The ALJ's Decision in this Case is Supported by Substantial Evidence.**

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson v. Perales, 402 U.S. 389, 401 (1971), and "does not mean a large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but rather "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Biestek, 139 S. Ct. at 1154. We also acknowledge that an ALJ's mental RFC assessment does not have to follow any particular format and should be upheld "as long as the ALJ offers a 'valid explanation,' " for that assessment. Hess, 931 F.3d at 211.

Judged against these deferential standards of review, we find that substantial evidence supported the ALJ's mental RFC assessment in this case. At the outset, we are constrained to observe that in Vargas v. Saul, No. 1:19-CV-1858, 2020 WL 2468401 (M.D. Pa. May 13, 2020), we rejected a similar argument, finding instead that:

[I]t cannot be said that the mere possibility that initial training for these jobs might involve more than occasional contact in the first weeks on the job wholly undermined the ALJ's decision in a material way which compels a remand of this case.

Id. at *9.

We continue to adhere to this view. Indeed, we note that at least one other court has subsequently embraced the rationale of the Vargas decision when assessing similar arguments by disability claimants. Christopher F. v. Kijakazi, No. 1:21-CV-516, 2022 WL 9169835, at *19 (D.N.J. Oct. 14, 2022). More, courts have frequently sustained decisions like the ALJ's determination in this case, which found that a claimant could perform SVP level 2 jobs when the ALJ limited that claimant to occasional interactions with coworkers or supervisors. See, e.g., Smathers v. Saul, Case No. 18-1743, 2019 WL 5549340, at *9-10 (M.D. Pa. Sept. 30, 2019) (recommending affirmance of ALJ decision where SVP level 2 jobs were identified and claimant was limited to "occasional interaction with coworkers and supervisors, but no interaction with public"), adopted, 2019 WL 5550017 (M.D. Pa. Oct. 25, 2019); Davis v. Comm'r of Soc. Sec., No. 18-17126, 2019 WL 4686818, at *3 (D.N.J. Sept. 26, 2019) (affirming where ALJ found claimant not disabled for a period in which claimant was capable of "simple, routine, repetitive tasks that have a skill level of SVP 2" and "occasional interaction with supervisors and coworkers");

Romanoskey v. Berryhill, No. 16-2540, 2018 WL 1976472, at *8 (M.D. Pa. Mar. 27, 2018) ("The ALJ included in the hypothetical question the vocational limitations as unskilled, light work with [among other things] . . . an SVP of 2 or below; no interaction with the public; and no more than occasional interaction with supervisors or coworkers. . . . This was an entirely appropriate hypothetical question as it included all of Romanoskey's limitations as supported by the record"), adopted, 2018 WL 1967306 (M.D. Pa. Apr. 26, 2018); Gardner v. Comm'r of Soc. Sec., No. 16-4567, 2017 WL 4316877, at *5-7 (D.N.J. Sept. 28, 2017) (unskilled jobs compatible with limitation to "'occasional interaction with coworkers and supervisors, and no interaction with members of the public'").

A number of these cases cast doubt upon the proposition that constitutes the keystone of Drozd's claim here—the idea that probationary training period requirements which may briefly exceed occasional contact wholly undermine an RFC which limits a worker to only occasional contacts with coworkers and supervisors. For example, in Torres v. Comm'r of Soc. Sec., No. 14-6178, 2015 WL 8328346, at *7 (D.N.J. Dec. 8, 2015), the court rejected the claimant's argument that the probationary period of most unskilled work requires more than occasional contact, and that an inability to ensure that the worker would be strictly confined to

only occasional contact during training rendered an individual unable to sustain

employment. The court instead held that:

> Plaintiff cites no support for his position that a limitation to occasional
> interaction with supervisors (during a probationary period or otherwise)
> necessarily directs a finding of disability. . . . . Indeed, courts routinely
> find that an individual can perform unskilled work in the national
> economy, despite a limitation to only occasional interaction with
> coworkers, supervisors, and the public. See, e.g., Butler v. Colvin, No.
> 13-7488, 2015 WL 570167 (D.N.J. Feb. 11, 2015) (finding that
> substantial evidence supported the Commissioner's decision where
> Plaintiff was limited to only occasional interaction with co-workers and
> supervisors); Anderson v. Colvin, No. 14-94, 2015 WL 539909 (W.D.
> Pa. Feb. 10, 2015) (same); McCarl v. Colvin, No. 13-1803, 2015 WL
> 540067 (W.D. Pa. Feb. 10, 2015) (same); Torres v. Comm'r of Soc.
> Sec., No. 13-5439, 2015 WL 418171 (D.N.J. Jan. 30, 2015) (affirming
> where the ALJ's RFC assessment, which included only occasional
> interaction with supervisors, coworkers, and the public, was consistent
> with the claimant's functional limitations); Williams v. Colvin, No. 13-
> 5566, 2015 WL 221078 (E.D. Pa. Jan. 15, 2015) (same).

Torres, No. CV 14-6178 (JBS), 2015 WL 8328346, at *7 (D.N.J. Dec. 8, 2015).

Likewise, in Thomas v. Colvin, the court rejected a similar claim that initial job

training requirements for an unskilled job undermined an ALJ's mental RFC

assessment, noting that: "The ALJ adequately accounted for Plaintiff's moderate

limitations with concentration, persistence, or pace by limiting her to simple, routine,

repetitive tasks; no fast pace or high production quotas; superficial interaction with

others (meaning of a short duration for a specific purpose)." Thomas v. Colvin, No.

1:16 CV 00675, 2016 WL 8346524, at *13 (N.D. Ohio Dec. 12, 2016), report and

recommendation adopted sub nom. Thomas v. Comm'r of Soc. Sec. Admin., No. 1:16-CV-675, 2017 WL 773586 (N.D. Ohio Feb. 27, 2017).

Further, this argument fails when it is viewed through the pragmatic analytical lens prescribed by the Court of Appeals in Hess. In our view, Hess controls here and enjoins us to address Drozd's ability to undertake the mental demands of the workplace in the specific factual context of this case. Further, applying this fact-bound approach, we are instructed that a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

Here, the ALJ provided a valid explanation for this RFC, which limited Drozd to "work involving only simple, routine tasks, but not at a production rate pace; is limited to no more than simple work-related decisions; could tolerate no more than occasional changes in the work setting; and is limited to occasional interaction with supervisors, co-workers, and the public." (Tr. 23). The restrictions imposed by the ALJ were consistent with the ALJ's carefully detailed factual findings which indicated that, with some accommodation, Drozd was able to meet the intellectual and emotional demands of the workplace. Significantly, none of these factual findings are directly challenged in this appeal, and substantial evidence in the form of clinical evidence, expert opinions, and Drozd's reported activities of daily living support these factual findings by the ALJ.

Furthermore, the vocational expert testified that the representative jobs identified in this case—garment folder, marker, and routing clerk—were consistent with this RFC. (Tr. 70). This testimony, in turn, was entirely consistent with the Dictionary of Occupational Title definitions for these jobs, which described the job titles as SVP 2 positions, whose training requirements are minimal and consist of "[a]nything beyond short demonstration up to and including 1 month." APPENDIX C - COMPONENTS OF THE DEFINITION TRAILER, 1991 WL 688702. These positions also only entailed Level 1 or 2 reasoning skills and merely required the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions," or "[a]pply commonsense understanding to carry out simple one-or two-step instructions."

In light of these facts, all of which supported the ALJ's decision to limit Drozd to "work involving only simple, routine tasks, but not at a production rate pace; is limited to no more than simple work-related decisions; could tolerate no more than occasional changes in the work setting; and is limited to occasional interaction with supervisors, co-workers, and the public", the fact that the initial brief training period for these jobs might involve more than occasional contact in the first weeks on the job does not wholly undermine the ALJ's decision in a material way that compels a remand of this case. Therefore, this argument fails.

25

In any event, even if we concluded that the ALJ erred in not further discussing the training requirements for these jobs, we would find that any such error was harmless on the facts of this case. Social Security appeals are subject to harmless error analysis. Therefore:

> [A]ny evaluation of an administrative agency disability determination must also take into account the fundamental principle that: "'No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.'" Moua v. Colvin, 541 Fed.Appx. 794, 798 (10th Cir. 2013) quoting Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989). Thus, ALJ determinations in Social Security appeals are subject to harmless error analysis, Seaman v. Soc. Sec. Admin., 321 Fed.Appx. 134, 135 (3d Cir. 2009) and "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409, 129 S. Ct. 1696, 1706, 173 L.Ed. 2d 532 (2009).

Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *4 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017). In this regard "we apply harmless error analysis cautiously in the administrative review setting." Fischer–Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). However:

> In Social Security appeals courts may apply harmless error analysis when assessing the sufficiency of an ALJ's decision. Seaman v. Soc. Sec. Admin., 321 Fed.Appx. 134, 135 (3d Cir. 2009). "Under the harmless error rule, an error warrants remand if it prejudices a party's 'substantial rights.' An error implicates substantial rights if it likely affects the outcome of the proceeding, or likely affects the 'perceived

fairness, integrity, or public reputation of judicial proceedings.'" Hyer
v. Colvin, 72 F. Supp. 3d 479, 494 (D. Del. 2014).

Harrison v. Berryhill, No. 3:17-CV-618, 2018 WL 2051691, at *5 (M.D. Pa. Apr.

17, 2018), report and recommendation adopted, No. 3:17-CV-0618, 2018 WL

2049924 (M.D. Pa. May 2, 2018).

Here, the jobs identified by the vocational expert as representative positions

which Drozd could perform involved modest intellectual demands and entailed

minimal training. The jobs identified by the vocational expert all had a specific

vocational preparation (SVP) level of 2. In terms of its intellectual requirements, this

is a forgiving standard for work. To perform these tasks Drozd simply had to be able

to "[a]pply commonsense understanding to carry out simple one or two step

instructions." (Tr. 76), or  [a]pply commonsense understanding to carry out detailed

but uninvolved written or oral instructions." (Tr. 126, 184). The ALJ correctly

concluded that the clinical record and medical opinions showed that Drozd was able

to meet these minimal intellectual work demands.   Moreover, the training

requirements for these SVP 2 positions were modest and consisted of "[a]nything

beyond short demonstration up to and including 1 month." APPENDIX C -

COMPONENTS OF THE DEFINITION TRAILER, 1991 WL 688702. Nothing

suggested that Drozd would be unable to meet this very low training threshold. Quite

the contrary, the record affirmatively revealed that Drozd had "never been fired due

to interpersonal issues and she reports no limitation when interacting with authority figures." (Tr. 22). Given this evidence, any alleged error by the ALJ in failing to further discuss the training requirements for these simple tasks was harmless in Drozd's case.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law, was adequately articulated and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.' " Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case. Therefore, this decision will be affirmed.

**IV.**  <u>**Conclusion**</u>

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed and the plaintiff's appeal denied.

An appropriate order follows.


<u>/S/ Martin C. Carlson</u>
Martin C. Carlson
United States Magistrate Judge

DATED: January 6, 2023